UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FOREST JACOB SHIELDS,<br><br>Defendant. | NO. 2:16-CR-00012-JLQ<br><br>ORDER RE: PRETRIAL CONFERENCE |

## I.  Introduction

On September 19, 2016, the court held a pretrial conference in this matter. Defendant was present in custody, represented by Andrea George and Colin Prince of the Federal Defenders of Eastern Washington and Idaho. Assistant United States Attorney Caitlin Baunsgard appeared for the Government. This Order memorializes and supplements the court's oral rulings.

## II.  Procedural History

On January 20, 2016, a three count Indictment was returned charging the Defendant, Forest Shields, with: (1) Possession with Intent to Distribute 50 Grams or More of Pure Methamphetamine; (2) Felon in Possession of a Firearm; and (3) Possession of a Firearm in Furtherance of Drug Trafficking. (ECF No. 1). All of the charges were alleged to occur on or about July 21, 2015. (ECF No. 1).

Defendant pled guilty on May 25, 2016, pursuant to a Fed.R.Crim.P. 11(c)(1)(C) Plea Agreement. The court accepted his plea of guilty but reserved ruling on the

ORDER - 1

acceptance or rejection of the Plea Agreement until after a review of the Presentence Report. *See* Fed.R.Crim.P. 11(c)(3)(A).

On July 18, 2016, the court rejected the Plea Agreement as being too lenient in light of Defendant's extensive criminal history. (ECF No. 54). After being informed by the court of his options under Fed.R.Crim.P. 11(c)(5), Defendant withdrew his plea of guilty. (ECF No. 54 at 5). Thereafter, the court entered a new Scheduling Order setting trial for October 3, 2016, and pretrial motions to be filed no later than September 2, 2016. (ECF No. 54 at 5-6).

There were several motions pending for the Pretrial Conference: (1) Defendant's Ex Parte Motion to Withdraw Based on Conflict (ECF No. 57); (2) Defendant's Motion to Suppress Statement (ECF No. 63); (3) Defendant's Motion to Compel Discovery (ECF No. 66); (4) Defendant's Motion to Suppress (ECF No. 67) regarding how law enforcement found out where Defendant was staying; (5) Defendant's Motion in Limine (ECF No. 68); (6) Defendant's Motion for Identity of the Informant (ECF No. 69); and (7) Defendant's Motion to Suppress (ECF No. 70) regarding the adequacy of a search warrant.

On September 8, 2016, the Government responded to the Motion to Suppress (ECF No. 67) concerning fruits of the search of Defendant's motel room. *See* (ECF No. 72). The Government timely responded to the remaining motions on September 9, 2016. *See* (ECF No. 74); (ECF No. 75); (ECF No. 76); (ECF No. 78). Defendant filed a Reply (ECF No. 81) on the Motion to Suppress (ECF No. 70).

**III.  Discussion**

**A.  Motion to Withdraw (ECF No. 57)**

On July 20, 2016, Ms. George filed a Motion to Withdraw based on the Government's then recent disclosure that it intended to call as a witness to testify against Defendant an individual represented by the Federal Defenders. (ECF No. 57). The court

spoke in chambers with Ms. Baunsgard who disclosed the person had been involved in a free talk and disclosed his knowledge of Defendant's drug dealings. However, the conversation was cut off at that point so Ms. Baunsgard was not aware whether this individual had personal knowledge of the charged offenses against Defendant.

The court also spoke with Ms. George, and Matthew Campbell, who represented the witness. The court directed Mr. Campbell and Ms. Baunsgard to speak with the witness and determine whether or not he has direct information of the charged offenses.

At the Pretrial Conference, counsel for the Government stated she would not be calling this witness at Defendant's trial. Based on counsel's statement, the Motion was Denied as Moot.

**B.     Motion to Suppress Statement (ECF No. 63)**

After his arrest on July 21, 2015, Defendant made a statement to police wherein he admitted to the shooting on July 13, 2015. Defendant sought to exclude that statement because the law enforcement officer allegedly used "improper influence such that [Defendant's] will was overborne." (ECF No. 63 at 1). Defendant argued law enforcement coerced Defendant to confess after threatening to arrest his girlfriend. *See* (ECF No. 63 at 9-14).

It is a deprivation of due process if a defendant's "conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession... and even though there is amply evidence aside from the confession to support the conviction." *Jackson v. Denno*, 378 U.S. 368, 376 (1964). "A confession is involuntary whether coerced by physical intimidation or psychological pressure." *U.S. v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981). The confession "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Malloy v. Hogan*, 378 U.S. 1, 7 (1964) (quoting *Bram v. U.S.*, 168 U.S. 532, 542-43 (1897)).

ORDER - 3

"The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *U.S. v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988). It is the Government's burden to prove a confession is voluntary by a preponderance of the evidence. *Tingle*, 658 F.2d at 1335.

Defendant argued his confession was involuntary because officers presented him with the option of either confessing or arresting his girlfriend for possession of the firearm. (ECF No. 63 at 11). Defendant relied heavily upon dicta in a Ninth Circuit case wherein the court stated: "[i]f the officers in the case before us had expressly threatened [the suspect's girlfriend] with arrest and prosecution, or had bargained with [the suspect] in exchange for her release, we would have serious doubts about the admissibility of the confession." *U.S. v. McShane*, 462 F.2d 5, 7 (9th Cir. 1972). Defendant asserted his situation "is exactly the example the Ninth Circuit" discussed in *McShane*. (ECF No. 63 at 10).

Defendant also asserted he was high on methamphetamine which should be considered "a relevant factor in determining whether the police coercion overbore the will" of Defendant. (ECF No. 63 at 11). Defendant argued his diagnosis with Post-Traumatic Stress Disorder is relevant because it allegedly caused him to be overly protective of his girlfriend. (ECF No. 63 at 13).

Counsel for the Government stated she does not intend to use Defendant's confession in the Government's case-in-chief, but also argued the confession was knowing and voluntary. (ECF No. 78 at 1-2). The Government noted Defendant signed a written waiver of his *Miranda* rights, Defendant did not appear to have any difficulty understanding the questions, Defendant has a GED and has taken college classes, and Defendant is well-experienced with law enforcement due to his numerous arrests. (ECF

ORDER - 4

No. 78 at 11). Additionally, the Government asserted there is no evidence showing Defendant was under the influence of methamphetamine. (ECF No. 78 at 11).

At the Pretrial Conference, counsel for the Government stated she will not use Defendant's statement for any purpose at trial. The confession seems to have limited relevance to the federally charged conduct because Defendant confessed to shooting an individual on July 13, 2015, and arguably to possessing the firearm on July 13, 2015. All of the instant federal charges stem from July 21, 2015. *See* (ECF No. 1). As such, the confession at most holds marginal relevance for the instant charges. Based on the Government's concession it will not use the confession for any purpose, the Motion was Denied as Moot. The court made comments on the propriety of the confession and permissible uses, but those comments need not be restated herein or construed as actual findings because they are unnecessary to resolve the Motion.

**C.    Motion to Compel Discovery (ECF No. 66)**

Defendant sought to compel disclosure of: (1) all cell-site location information for any phones seized by officers; and (2) the identity, any statement, and the whereabouts of an undisclosed witness who allegedly informed law enforcement the Defendant and his girlfriend were in possession of two firearms. (ECF No. 66 at 3).

The Government responded, stating there was no cell site simulator used in this case. (ECF No. 76 at 2). Defendant's cell phone was left behind at the shooting scene on July 13, 2015, but law enforcement was not aware it was his phone. (ECF No. 76 at 2). Law enforcement obtained authorization to use a cell site simulator to try and locate Defendant, but the phone was off and in police custody. (ECF No. 76 at 2). Thus, there was no evidence to provide related to the cell site simulator. (ECF No. 76 at 2).

Counsel for the Government also stated she spoke with defense counsel about the informant and no court action is necessary on this issue. (ECF No. 76 at 1-2). During the

ORDER - 5

hearing, Counsel confirmed the parties have resolved the issues related to this Motion. Accordingly, the Motion was Denied as Moot.

**D.    Motion to Suppress Cell-Site Information (ECF No. 67)**

Counsel for the Defendant stated she was unsure how the Government located Defendant at the Motel 6. (ECF No. 67 at 2). Defendant sought suppression "to the extent the officers used a warrantless cell-site simulator search." (ECF No. 67 at 2).

The Government responded, stating the source was disclosed in discovery as being a confidential informant. (ECF No. 72 at 1-2). Additionally, law enforcement did not use the cell-site simulator they obtained authorization for, and any attempt to use it would have been futile because Defendant's phone was in police property. (ECF No. 72 at 2).

Based on the parties' agreeing the issues in this Motion are resolved, the Motion was Denied as Moot.

**E.    Motion in Limine (ECF No. 68)**

Defendant sought to exclude evidence regarding the shooting which took place on July 13, 2015. (ECF No. 68 at 1). Defendant asserted evidence of the shooting: (1) is not relevant; (2) is unrelated to the charges in the Indictment; and (3) if relevant, is more prejudicial than probative. (ECF No. 68 at 3-4).

The Government previously filed a Notice of Intent to Admit Fed.R.Evid. 404(b) Material (ECF No. 33), wherein the Government stated its intent to introduce "evidence related to Shields [sic] possession of a revolver with 'red tipped' bullets on July 13, 2015." (ECF No. 33 at 1). In its Response to the Motion in Limine, the Government specified it "does not intend to offer the totality of the evidence related to the shooting at trial." (ECF No. 74 at 2).

The Government stated it intended to call Andrew Allenby, the shooting victim, to testify that on July 13, 2015, Defendant was in possession of a firearm with "red tipped bullets" which the victim knew because Defendant pointed the gun at him "in such a way

his senses were heighted [sic] and his memory of that incident is very clear." (ECF No. 74 at 2). The Government did not intend to introduce evidence that Defendant shot Andrew Allenby in its case-in-chief. (ECF No. 74 at 2). The Government stated it intends to pursue a line of questioning, including the shooting, "if appropriate under the circumstances" should Defendant testify or open the door through cross-examination of other witnesses. (ECF No. 74 at 2).

The Government stated it intends to illicit testimony from Brandon Graham about being present on July 13, 2015, to purchase methamphetamine from Defendant. (ECF No. 74 at 2). The Government also intended to use text messages between Graham and Defendant documenting the drug transaction. (ECF No. 74 at 2).

Fed.R.Evid. 404(b) states "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed.R.Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed.R.Evid. 404(b)(2). If the Government intends to present such evidence, it must provide "reasonable notice of the general nature of any such evidence." Fed.R.Evid. 404(b)(2)(A).

Fed.R.Evid. 404(b) is "a rule of inclusion." *U.S. v. Alfonso*, 759 F.2d 728, 739 (9th Cir. 1985)."[E]vidence of past wrongful acts is admissible if it is relevant to an issue *other* than the defendant's character or criminal propensity." (*Id.*). "Unless the evidence of other crimes tends only to prove propensity, it is admissible." *U.S. v. Jackson*, 94 F.3d 1154, 1159 (9th Cir. 1996).

The evidence may be admitted if it meets the following four-factor test: "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4)

ORDER - 7

(in some cases) the act is similar to the offense charged." *U.S. v. Ramos-Atondo*, 732 F.3d 1113, 1123 (9th Cir. 2013) (citations omitted).

The Government filed Notice as required under this rule (ECF No. 33), but also relied on a former version of Fed.R.Evid. 404(b).

Defendant is charged with, *inter alia*, possessing a firearm and drugs with intent to distribute. The fact he possessed a firearm with identical styled bullets eight days before the charged offense is relevant to show the firearm and ammunition found on July 21, 2015 was Defendant's. Additionally, a drug transaction eight days prior tends to show Defendant's possession on July 21, 2015, was with intent to distribute. The fact these events occurred eight days prior to the charged conduct, is sufficiently close in time to be relevant. There are similarities between the proffered evidence and the charged conduct. All of these reasons support the inclusion of evidence of Defendant's possession of red-tipped bullets on July 13, 2015, and evidence of a drug transaction with Graham. Any dissimilarities can be properly addressed through cross-examination.

The fact of the shooting would appear to be unduly prejudicial and not relevant to the instant federal offenses, however, the Government does not intend to introduce any evidence or testimony that Defendant shot Allenby on July 13, 2015. In light of these observations, the court Reserved ruling on this Motion.

**F.    Motion for Identity of Informant (ECF No. 69)**

Defendant requested the court to require the Government to reveal the identity, any statement, and the whereabouts of the informant who provided a free talk with law enforcement regarding statements made by Defendant. (ECF No. 69 at 2). The Government responded, stating counsel spoke with counsel for Defendant and no court intervention is necessary. (ECF No. 76 at 1-2). The parties confirmed the issues in this Motion have been resolved. Accordingly, it was Denied as Moot.

///

**G.   Motion to Suppress (ECF No. 70)**

Through this Motion, Defendant asserts a search warrant for the motel room from which Defendant fled when he arrested lacked sufficient nexus between the items in the backpack and the motel room. (ECF No. 70 at 2-3). Defendant asserts the affidavit in support of the search warrant only showed that Defendant had been present in the motel room, but does not contain specific facts suggesting the weapon used eight days earlier in the drug transaction shooting was present. (ECF No. 70 at 2). Defendant filed a 26 page Reply wherein he raised additional arguments. (ECF No. 81).

"A search warrant ... is issued upon a showing of probably cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police." *Steagald v. U.S.*, 451 U.S. 204, 213 (1981). The "probable cause standard ... is a practical, nontechnical conception." *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (citation omitted). "[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." (*Id.* at 232). "Probable cause exists if 'it would be reasonable to seek the evidence in the place indicated in the affidavit.'" *U.S. v. Wong*, 334 F.3d 831, 836 (9th Cir. 2003) (quoting *U.S. v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985)). "[D]irect evidence linking criminal objects to a particular site is not required for the issuance of a search warrant." *U.S. v. Jackson*, 756 F.2d 703, 705 (9th Cir. 1985).

While the affidavit in support of a search warrant cannot "rest upon mere affirmance or belief without disclosure of supporting facts or circumstances," the affidavit "should be tested in a commonsense and realistic fashion." *U.S. v. Dubrofsky*, 581 F.2d 208, 212 (9th Cir. 1978). The affidavit "need only recite sufficient underlying circumstances to enable the magistrate to perform his detached function and not serve as a mere rubber stamp." (*Id.* at 212-13). The search warrant "may be upheld when the nexus

between the items to be seized and the place to be searched rests not upon direct observation, but on the type of crime, nature of the items, and normal inferences where a criminal would likely hide contraband." (*Id*. at 213).

On July 21, 2015, at 5:23 p.m., Spokane Police Detective Randy Lesser submitted an affidavit and request for a search warrant for Room 210 at the Motel 6 located in the Spokane Valley to search for items related to the shooting by and murder charge of the Defendant on July 13, 2015. (ECF No. 75-1 at 12-13). Detective Lesser recited the facts learned surrounding the shooting of July 13, 2015, and also disclosed Brandon Graham, who was with Defendant during the shooting, saw Defendant give the revolver to Defendant's girlfriend after Defendant threatened Graham with it. (ECF No. 75-1 at 6-7). Detective Lesser also stated "[o]n 7/21/2015, I received a call from Officer Cole (PACT Team) and he indicated that they had received information that Shields was hiding at the Motel 6 in the valley." (ECF No. 75-1 at 12). Detective Lesser further explained "[t]he PACT Team subsequently set up surveillance at the room. At one point Lea Rae Schmidt [Shields' girlfriend] exited out of room #210 and walked out to a Mitsubishi Montero in the parking lot. She was then detained by officers." (ECF No. 75-1 at 12). After law enforcement detained Schmidt, Defendant was seen attempting to flee out the back window of Motel 6 Room 210. The Defendant was then arrested. (ECF No. 75-1 at 12). Schmidt told law enforcement a female friend of Defendant's rented the room for Schmidt and Defendant. (ECF No. 75-1 at 12).

At 7:42 p.m., prior to any entry into Room 210 by police officers, a Spokane County Court Commissioner signed a search warrant authorizing law enforcement to search Room 210 for: (1) dominion and control paperwork referencing the room; (2) any firearms; (3) holster or gun boxes; (4) bullets or any shell casings; (5) any expended bullets or bullet fragments; (6) DNA or fingerprint evidence that might tie Defendant to the room or anything in the room; (7) any cell phones in the room; (8) any electronic

ORDER - 10

devices that might contain evidence of the crime; (9) any documents, including photographs, that might contain evidence of the crime; (10) any clothing, gloves, hats, or shoes which might belong to Defendant; and (11) any vehicle keys potentially belonging to the vehicle driven by Defendant and his girlfriend. (ECF No. 75-1 at 16).

Detective Lesser submitted an addendum at 10:17 p.m., stating when officers began executing the Room 210 search warrant, they found a backpack sitting on a chair, which, when opened, had a box containing baggies containing "a white crystal like material that was the size of about a golf ball." (ECF No. 75-2 at 11-12). The material "appeared to be similar in texture and visual appearance to methamphetamine." (ECF No. 75-2 at 12). The backpack also contained drug paraphernalia. (ECF No. 75-2 at 12). Because the first search warrant did not include any drugs or drug related items, Detective Lesser sought a second warrant to search for drugs and drug paraphernalia. (ECF No. 75-2 at 12). At 10:29 p.m., the Court Commissioner signed the second search warrant permitting a search for packaging, paraphernalia, and baggies of drugs. (ECF No. 75-2 at 14-16).

In arguing there is an insufficient nexus between the items to be searched and the motel room, Defendant relied on a First Circuit case which broadly stated "[c]ommon sense tells us that it is unlikely that a murderer would hide in his own home a gun used to shoot someone." *U.S. v. Charest*, 602 F.2d 1015, 1017 (1st Cir. 1979). This court is not alone in doubting the accuracy of such a broad statement. *See U.S. v. Buchanan*, 910 F.2d 1571, 1573-74 (7th Cir. 1990).

The Seventh Circuit explained the factual differences between *Charest* and *Buchanan*:

> We believe that this case is significantly different from *Charest,* and that the differences establish that it would be reasonable to seek the Ohio gun in Buchanan's Wisconsin hotel room despite the passage of time. The principal difference between the cases is that Charest was living openly in a home he had apparently occupied for a long time whereas Buchanan was a fugitive living in temporary quarters under a false name. Anyone looking for Charest knew exactly where to look—he could always be found at his Fall River home. Someone looking for Buchanan would have to have the foresight to

ORDER - 11

> ask at the right hotel for Darryl Bailey. Buchanan could reasonably be supposed to have made the gun unavailable by making himself unavailable. And, as the magistrate noted in his second report and recommendation: "One traveling in fugitive status is highly vulnerable and is necessarily constrained in movement and activity. The value of a firearm to such a person cannot be underestimated." Beyond even Buchanan's fugitive status, he was also believed by police to be involved in drug dealing even before any cocaine was found. As we have already noted, guns are tools of the drug merchant's trade.

*Buchanan*, 910 F.2d at 1574.

The Seventh Circuit stated, despite no evidence connecting the murder weapon to the hotel room and it being 37 days since the murder, "it would have been foolish not to want to look for a gun there." (*Id.* at 1573). The facts of the instant matter align closely to *Buchanan* and are distinguishable from *Charest*. Like the defendant in *Buchanan*, Defendant was a fugitive staying in a motel room rented by another person and was also allegedly involved with drug trafficking. Both Buchanan and Defendant were convicted felons who were unable to legally purchase a firearm. *See Buchanan*, 910 F.2d at 1574. Additionally, there was no evidence suggesting Defendant was attempting to get rid of the weapon, which like the defendant in *Buchanan* makes it "reasonable to believe that a search of Buchanan's hotel room had a fair chance of discovering the gun." (*Id.*). The fact it took law enforcement eight days to find Defendant speaks to the difficulty in locating him, which stands in opposition to the facts in *Charest*. The basis behind the First Circuit's "common sense" observation is inapplicable to Defendant Shields for the reasons set forth in *Buchanan*.

Defendant also argued the items listed in the search warrant are not supported by probable cause. (ECF No. 81 at 19-22). Defendant placed the items into three categories: (1) electronic devices, cell phones, and "documents"; (2) clothes, gloves, hats, shoes, and keys; and (3) DNA, fingerprints, and dominion and control paperwork. (ECF No. 81 at 19-22).

Defendant argued the request to search for electronic devices that "might" contain evidence demonstrates the entire search was "a fishing expedition." (ECF No. 81 at 19-

ORDER - 12

20). He also asserted "any documents" was overbroad. (ECF No. 81 at 20). The court finds it reasonable to believe that electronic devices, such a cell phone, could be present in the motel room and contain text messages or call logs between Defendant and Allenby or Graham relevant to the attempted murder law enforcement was investigating. The word "documents" was limited by the phrase "that might contain evidence of the crime" and documents, such as notes, letters, or photographs, could reasonably be expected to be in the motel room and be relevant to the shooting. Graham had already admitted the shooting occurred in connection with a drug transaction. *See* (ECF No. 75-1 at 6). Evidence of the drug transaction would connect Defendant to the shooting and it was reasonable to believe such evidence could be found at the motel room.

Next, Defendant argued the request to search for clothes, gloves, hats, shoes, and keys was not supported by anything in the affidavit. (ECF No. 81 at 21). Defendant also asserted, using the *Charest* case, Defendant would not have kept any clothes he was wearing on the day of the shooting. (ECF No. 81 at 21). The court finds these arguments unpersuasive. The officer reviewed the surveillance video in connection with the shooting and was seeking clothes that might have blood, or gun shot residue, or other evidence connecting Defendant to the shooting. It is not necessary to provide more details than Detective Lesser put in the affidavit. A reasonable magistrate could infer the clothes Defendant wore at the time of the shooting could be in the motel room and could reasonably be expected to have some sort of forensic evidence connected to the shooting. Even if no forensic evidence were present, finding the same or similar clothes to that shown in the shooting surveillance video would be evidence connecting Defendant to the shooting.

The court does not find the First Circuit's broad statement persuasive, because in this court's experience there is no uniform response by suspects to immediately abandon weapons or other evidence of a crime. As the Seventh Circuit explained, there are reasons

ORDER - 13

individuals flee and keep the weapon and other evidence from a crime. *See Buchanan*, 910 F.2d at 1574.

Lastly, Defendant asserted the request to search for DNA, fingerprints, and dominion and control paperwork was "secondary material–evidence that would be used to establish Shields was actually in room #210 or that other items found there belonged to him." (ECF No. 81 at 22). Because Defendant was already in custody, he argued, law enforcement could obtain DNA and fingerprints from him. (ECF No. 81 at 22). While law enforcement officers observed Defendant fleeing the motel room, it is reasonable to believe (as has been borne out in the instant matter) Defendant may claim he was not the only one who possessed or had access to the room. The fact the room was rented in another person's name meant law enforcement needed to establish Defendant's presence in the room for more than a fleeting moment. The court found evidence of Defendant's DNA, fingerprints, and dominion and control paperwork was not secondary evidence. It was reasonable evidence to seek specifically from the motel room and the affidavit presented probable cause to support the search for such evidence.

For all of these reasons, the court found the search warrant was supported by probable cause and the Motion to Suppress is Denied.

Although Defendant did not raise the good faith exception until his Reply brief, the court addressed the good faith exception at the motion hearing. "If a warrant lacks probable cause, evidence obtained during its execution should generally be suppressed under the exclusionary rule." *U.S. v. Underwood*, 725 F.3d 1076, 1084 (9th Cir. 2013). However, there are "significant exceptions" to the exclusionary rule. (*Id*. at 1085). One exception, known as the "good faith" exception, is satisfied if the law enforcement officer acts "in objectively reasonable reliance" on the search warrant. *U.S. v. Leon*, 468 U.S. 897, 922 (1984). In determining whether the good faith exception applies, "all of the circumstances—including whether the warrant application had previously been rejected by

ORDER - 14

a different magistrate—may be considered." (*Id*. at 923 n. 23). "But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Davis v. U.S.*, 564 U.S. 229, 238 (2011) (internal quotation marks and citations omitted). The Government carries the burden of showing the good faith exception applies. *Underwood*, 725 F.3d at 1085.

There are four situations which *per se* fail to satisfy the good faith exception because in those situations, "the officer will have no reasonable grounds for believing that the warrant was properly issued." *Leon*, 468 U.S. at 922-23. The four situations are: (1) where the affiant recklessly or knowingly placed false information in the affidavit which in turn misled the judge issuing the search warrant; (2) where the issuing judge "wholly abandoned his judicial role"; (3) where the affidavit in support of the request for warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the search warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." (*Id*.); *Underwood*, 725 F.3d at 1085.

"An affidavit is so lacking in indicia of probable cause, or bare bones, when it fails to provide a colorable argument for probable cause." *Underwood*, 725 F.3d at 1085. A "colorable argument is made when 'thoughtful and competent judges' could disagree that probable cause does not exist." (*Id*.) (Quoting in part *U.S. v. Howe*, 848 F.2d 137, 139-40) (9th Cir. 1988)).

Defendant argued Detective Lesser's affidavit "is lacking all indicia of probable cause" because it was based on "unexplained" inferences. (ECF No. 81 at 24-25). However, as addressed above, the affidavit contained sufficient facts giving rise to probable cause to search the motel room for instrumentalities related to the shooting on July 13, 2015. When the officers found the backpack which contained drugs, they took the

ORDER - 15

additional responsible step to obtain an updated search warrant to include searching for drugs and drug paraphernalia. The court finds the law enforcement officers acted properly in their actions and there was no conduct which would merit application of the exclusionary rule.

Even if the search warrant was improperly issued, there existed at the very least a colorable argument for probable cause. It is reasonable to infer weapons and other evidence of the shooting would be at the Defendant's motel room eight days later. *See Buchanan*, 725 F.3d at 1084. While some judges might disagree, law enforcement acted with objective reasonableness in relying on the search warrant issued in this matter. For these reasons, the court would deny the Motion even if the affidavit lacked probable cause.

**H.    Motion for Reconsideration (ECF No. 85, 86, and 88)**

After the Pretrial Conference wherein the court made oral rulings on the pending motions, Defendant filed a Motion for Reconsideration and declaration of counsel regarding the Motion to Suppress (ECF No. 70). Defendant thereafter re-filed the document, which contained one additional sentence but did not include the declaration of counsel. *See* (ECF No. 86). Then, Defendant filed a Praecipe which included the revised Motion and also included the declaration of counsel. (ECF No. 88).

The Motion states its purpose as: "Mr. Shields asked that this motion be filed because, in the course of their search, officers seized two items not listed in the warrant." (ECF No. 88). Defendant argued the law enforcement officers "exceeded the scope of their existing warrant, demonstrating that the search was pretext to seek evidence of crimes unrelated to the alleged attempted homicide." (ECF No. 88 at 2). He also asserted this evidence showed the officers did not act in good faith. (ECF No. 88 at 3). Other than citing the standard for granting a motion for reconsideration, Defendant cited no case law in support of any of his arguments.

1     "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). "[T]he failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'" *School Dist. No. 1J, Multinomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Waltman v. International Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (holding where material were available at the time of the original motion, submitting those for the first time with a motion for reconsideration was untimely); *Frederick S. Wyle Professional Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (when evidence being offered on a motion for reconsideration was previously available, the moving party is "not entitled to reconsideration based on that evidence.").

    Defendant's Motion for Reconsideration does not purport to be based on any of the recognized grounds for reconsideration. The Motion attached two documents, the search warrant inventory return and the affidavit requesting a search warrant for the Mitsubishi Montero. *See* (ECF No. 88-1). Those documents were not previously part of the record, and there is no evidence suggesting those documents constitute "newly discovered evidence." Defendant is asking the court to reconsider its prior ruling on the Motion to Suppress based on a new argument, using previously existing but un-filed evidence. There is no assertion or grounds to show the court's prior ruling was clear error, nor is reconsideration necessary to prevent manifest injustice. The Motion for Reconsideration fails to demonstrate grounds warranting reconsideration of the court's ruling on the Motion to Suppress (ECF No. 70). For these reasons, the Motion for Reconsideration is Denied.

**IT IS HEREBY ORDERED**:

1. The *Ex Parte* Motion to Withdraw (ECF No. 57) is **DENIED AS MOOT**.
2. Defendant's Motion to Suppress Statement (ECF No. 63) is **DENIED AS MOOT**.
3. Defendant's Motion to Compel Discovery (ECF No. 66) is **DENIED AS MOOT**.
4. Defendant's Motion to Suppress (ECF No. 67) is **DENIED AS MOOT**.
5. Defendant's Motion in Limine (ECF No. 68) is **RESERVED**.
6. Defendant's Motion for Identity of Informant (ECF NO. 69) is **DENIED AS MOOT**.
7. Defendant's Motion to Suppress (ECF No. 70) is **DENIED**.
8. Defendant's Motion for Reconsideration (ECF No. 85), Amended Motion for Reconsideration (ECF No. 86), and Praecipe (ECF No. 88) are **DENIED**.
9. No later than **Thursday, September 29, 2016, at noon**, the parties shall each submit a list of their trial witnesses, including the name, city of residence, and profession for use by the court in jury selection on October 3, 2016.

**IT IS SO ORDERED**. The Clerk is hereby directed to enter this Order and furnish copies to counsel.

Dated September 23, 2016.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 18